# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL CUMMINS, *et al.*, | : | CIVIL NO. 1:22-CV-01205 |
| | : | |
| Plaintiffs, | : | (Magistrate Judge Schwab) |
| | : | |
| v. | : | |
| | : | |
| WAL-MART STORES EAST, L.P., | : | |
| individually and d/b/a WAL-MART | : | |
| SUPERCENTER, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

## I.  Introduction.

The plaintiffs, Michael and Tamera Cummins, bring claims for negligence and loss of consortium against a number of corporate defendants that own and operate a Walmart where Michael slipped and fell.  Currently pending is the defendants' motion for summary judgment.  For the reasons set forth below, we will grant the defendants' motion for summary judgment.

## II.  Background and Procedural History.

Michael Cummins ("Michael") and his wife, Tamera Cummins ("Tamera"), (collectively "the plaintiffs") began this action on August 2, 2022, by filing a

complaint against Wal-Mart Stores East, L.P.; Wal-Mart Stores East, Inc.; and Wal-Mart, Inc. (collectively "the defendants"). *Doc. 1*.  After conducting a case management conference with the parties, we set discovery deadlines, which we later extended. *Docs. 5, 12, 28, 31*.  On October 10, 2023, the defendants filed a motion for summary judgment, a brief in support thereof, and a statement of undisputed material facts. *Docs. 32–34*.  The plaintiffs later filed a brief in opposition to the defendants' motion for summary judgment and a counterstatement of material facts. *Docs. 37–38*.  The defendants filed a reply brief (*doc. 39*), and the motion is now ripe.

### III.  Summary Judgment Standards.

The defendants move for summary judgment under Rule 56(a) of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Through summary adjudication the court may dispose of those claims that do not present a 'genuine dispute as to any material fact' and for which a jury trial would be an empty and unnecessary formality." *Goudy-Bachman v. U.S. Dept. of Health & Human Services*, 811 F. Supp. 2d 1086, 1091 (M.D. Pa. 2011) (quoting Fed. R. Civ. P. 56(a)).

The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  With respect to an issue on which the nonmoving party bears the burden of proof, the moving party may discharge that burden by "'showing'—that is, point out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleading; rather, the nonmoving party must show a genuine dispute by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c).  If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial, summary judgment is appropriate. *Celotex*, 477 U.S. at 322.

Summary judgment is also appropriate if the nonmoving party provides merely colorable, conclusory, or speculative evidence. *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 249 (1986).  There must be more than a scintilla of evidence supporting the nonmoving party and more than metaphysical doubt as to the material facts. *Id.* at 252.   "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.  A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. *Id.* at 248–49.

When "faced with a summary judgment motion, the court must view the facts 'in the light most favorable to the nonmoving party.'" *N.A.A.C.P. v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).  At the summary judgment stage, the judge's function is not to weigh the evidence or to determine the truth of the matter; rather it is to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249.  The proper inquiry of the court "is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any

genuine factual issues that properly can be resolved only by a finder of fact

because they may reasonably be resolved in favor of either party." *Id.* at 250.

Summary judgment is warranted against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's

case and on which that party will bear the burden of proof at trial. *Celotex*, 477

U.S. at 322.  "Under such circumstances, 'there can be no genuine issue as to any

material fact, since a complete failure of proof concerning an essential element of

the nonmoving party's case necessarily renders all other facts immaterial.'"

*Anderson v. Consol. Rail Corp.*, 297 F.3d 242, 247 (3d Cir. 2002) (quoting

*Celotex,* 477 U.S. at 323).  "[S]ummary judgment is essentially 'put up or shut up'

time for the non-moving party: the non-moving party must rebut the motion with

facts in the record and cannot rest solely on assertions made in the pleadings, legal

memoranda, or oral argument." *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d

195, 201 (3d Cir. 2006).


## IV.  Material Facts.

The following facts are the material facts for purposes of the pending

summary judgment motion.[1]

---

[1]  Here, in accordance with Local Rule 56.1, the defendants filed a statement of material facts, and the plaintiffs filed a response.  Where the facts are undisputed, we cite to the defendants' statement of material facts. *Doc. 32.*  In

### A.  Michael's Fall.

"[O]n December 12, 2020, at approximately 6:00 p.m.[,]" Michael and
Tamera "were shopping at the Chambersburg Walmart for groceries and other
'odds and ends.'" *Doc. 32* ¶¶ 2, 3, 4.  As the plaintiffs walked through the store,
Michael saw some employees in various aisles collecting items to fulfill online
orders. *Doc. 32-1* ¶ 60–61.

The plaintiffs entered the soda aisle and walked the length of the aisle
toward the other end, beyond which the meat department was located. *Id.* ¶¶ 6, 7,
11, 29.  While in the soda aisle, Michael "was checking prices on beverages in

_____

accordance with our duty to "construe all facts and inferences in favor of the
nonmoving party[,]" *Peroza-Benitez v. Smith*, 994 F.3d 157, 164 (3d Cir. 2021)
(quoting *Santini v. Fuentes*, 795 F.3d 410, 419 (3d Cir. 2015)), where the plaintiffs
dispute a fact set forth in the defendants' statement of material facts and they cite
record evidence creating a genuine factual dispute, we cite to the plaintiffs' version
of the fact.  When citing to page numbers of a document, we use the page numbers
from the CM/ECF header on the top of the document.

In support of their denial of the defendants' statement of material facts, the
plaintiffs sometimes refer to "surveillance video." *See, e.g., doc. 38* ¶¶ 78, 79, 81.
The parties have not provided the court with this surveillance video, however.
Thus, when the plaintiffs refer only to surveillance video as evidence to support
their counterstatement of material facts, we consider those statements as being
without evidence, and we do not find a genuine issue of material fact.

In their statement of material facts, the defendants frequently state that
individuals "testified" to certain information, or otherwise "confirmed" or
"admitted" information during their depositions. *See, e.g., doc. 32* ¶¶ 9, 13, 14, 22,
31, 34, 35, 47, 49, 52, 57, 66, 72, 73.  Where the plaintiffs admit these statements
and it appears that the parties depend upon the statements for the truth of the matter
asserted at the deposition, we set forth the underlying statements.  Where we refer
to individuals testifying to something, we refer to testimony at the deposition of
that individual.

comparison with other local retailers." *Id.* ¶ 5.  As the plaintiffs walked down the aisle, Michael "was pushing a full sized shopping cart[,]" "'leaning on it' with both arms folded and resting on the handle[,]" rather than holding onto the cart. *Id.* ¶¶ 8, 9, 30, 36.  Michael and Tamera conversed as they walked, with Tamera on Michael's left "and immediately behind him[.]" *Id.* ¶¶ 6, 16, 30.  In total, the plaintiffs spent approximately four minutes in the soda aisle. *Id.* ¶¶ 17, 33; *but see id.* ¶ 11.

While in the soda aisle, "[Michael] did not have his glasses on" (*id.* ¶ 10); moreover, "he does not look at the floor when he is shopping, as he is looking for 'other people[customers]'" (*id.* ¶ 14) (alteration in original).  Nevertheless, both he and Tamera "did not see anything on the floor" in the soda aisle prior to Michael's fall; in particular, they saw no liquid. *Id.* ¶¶ 13, 18, 35.  The floor of the soda aisle, according to both of the plaintiffs, was white (*id.* ¶¶ 12, 34), although Michael testified it also had "black dots" (*id.* ¶ 12).  Neither Michael nor Tamera remembers any other customers in the soda aisle while they were in that aisle. *Id.* ¶¶ 15, 31.  Michael and Tamera also did not see any Walmart employees in the soda aisle, although Tamera stated she "didn't pay attention" (*doc. 32-2* at 22). *Doc. 32* ¶¶ 22, 32; *doc. 38* ¶¶ 22, 32.

"At the time of [Michael's] fall, [Tamera] was having a conversation with him, then she turned her gaze away from [Michael] in order to look at items in the

aisle, and by the time she looked back to [Michael], he had already fallen." *Doc. 32*

¶ 37.  "When [Michael] fell he injured his left elbow and left arm." *Id.* ¶ 27.

Although neither Michael nor Tamera noticed until after Michael fell, there was a

"pinkish liquid" on the floor where Michael fell. *Id.* ¶ 19, 39.  "[Michael] was

unable to determine where the liquid came from." *Id.* ¶ 20.  Tamera, however,

"believed [the pinkish liquid] was soda or juice that was leaking out of somebody's

cart while they were walking down the aisle." *Id.* ¶ 40.

        "After [Michael's] fall, [Tamera] and an unidentified customer went to look

for a Walmart employee." *Id.* ¶¶ 23, 38.  "A Walmart manager responded to the

scene in approximately . . . 10[ ] minutes." *Id.* ¶ 24.  Michael "was met by two,

male Walmart employees"[2] (*doc. 38* ¶ 25) but they "did not have the Walmart

investigation IPad with them . . . [so] they asked [Michael] to accompany them to

another area of the store where the IPad was present, so as to log his statement of

_____

        [2] Although the above statement is undisputed for purposes of this motion,
the plaintiffs state in their counter statement of material facts that there is a dispute
whether one or two Walmart employees approached Michael and took his
statement on the IPad.  Michael testified that two employees approached him and
then walked with him to another part of the store to take his statement. *Doc. 38* ¶
25 (citing *doc. 32-1* at 66).  Further, according to Michael, the two employees
"discussed the fact that the spill was found across multiple aisles[.]" *Id.*  But
George "denies that such a conversation took place." *Id.* (citing *doc. 32-4* at 48).
In their counterstatement of material facts, the plaintiffs also write that the
"defendant[s'] employees do not recall there being a second male employee at the
scene." *Id.*  But, because they do not cite to the record to support this assertion, we
do not give it any credence.

how the accident occurred" (*doc. 32* ¶ 25).  Michael's statement "confirmed that he 'stopped at the soda aisle and when [he] walked around the corner [he] slipped and fell on [his] left elbow.  There was juice on the floor.'"[3] *Doc. 32* ¶ 26.  "After completing his statement with the Walmart manager(s)[,] [Michael] went to Chambersburg Hospital for evaluation." *Id.* ¶¶ 28, 42.

## B.  Walmart's Response to Michael's Fall.

"[I]t is Walmart policy that if [sic] any associate who comes across a spill on the floor is to stand guard with the spill and to alert another associate or [a] manager or [the] maintenance [department] of the spill, but that the first on scene must stay with the spill until it is cleaned up." *Doc. 32* ¶ 47; *see also id.* ¶ 64.  "The first on scene employee would use a 'walkie' to call in the spill or would wait for another employee to walk by, as is instructed in Walmart's written policies." *Id.* ¶ 48.  "Associates are supposed to inspect any aisle that they are in." *Id.* ¶ 63.  "Walmart employees would identify and stand guard at any identified spills, even if the spill was not located in that employee's department." *Id.* ¶ 49; *see also id.* ¶ 65.

---

[3] Strangely, rather than proffer to the court the contents of Michael's statement to the Walmart employees, the parties instead appear to inform the court that Michael was *shown* this statement during the deposition. *Doc. 32* ¶ 26; *doc. 38* ¶ 26.  Turning to the deposition itself, however, Michael confirms that the statement we quote here is the statement he gave to the Walmart employees on the day of his fall. *Doc. 32-1* at 76.

On the day of Michael's fall, a Walmart employee, Debbie Kelly ("Kelly"), "was walking through the store and came upon the area where [Michael] was located after he fell." *Id.* ¶ 51.  Kelly was "the Team Leader over the deli and bakery department" "working on the date of the subject incident" and "report[ing] to asset protection coach Shannon George" ("George").[4] *Id.* ¶¶ 43, 44, 45.  Kelly "was first notified of [Michael's] fall when she came upon him after he fell." ¶ 55. Kelly then "guarded the area of the spill[.]" *Id.* ¶ 52.  "Kelly testified that she did not see the spill upon arriving at the scene because she did not inspect the area," and "although she 'guarded' the area, she did not look at the spill at any time while she guarded the area." *Doc. 38* ¶ 52.  "Kelly was the first Walmart employee on scene," and she reported Michael's fall to management. *Doc. 32* ¶ 68.

---

[4] Although George "was an Asset Protection Coach at the Chambersburg Walmart at the time of [Michael's] fall[,]" "his Asset Protection Coach duties are performed until 5:00 p.m., and . . . at 5:00 p.m. his position becomes 'regular manager covering the store[.]'" *Doc. 32* ¶ 58–59.  Because Michael's fall occurred around 6:00 p.m., "George's role at that time was manager on duty, and, as such, [his] duties included, *inter alia*, responding to customer concerns." *Id.* ¶ 60.

"After 5:00 p.m., . . . George will walk the floor, which includes the front end, the back room, and the whole store." *Id.* ¶ 61.  "[H]e walks the 'action alleys,' the main aisles of the store, and does so in a loop that takes approximately . . . 15[ ] to . . . 20[ ] minutes." *Id.* ¶ 62.  Although the plaintiffs, in their counterstatement of material facts, admit these statements, they also claim that "surveillance video . . . does not appear to show" George walking the floor as described. *Doc. 38* ¶¶ 61–62. But the plaintiffs did not provide surveillance video to the court, so we consider this assertion to be without evidentiary support and, accordingly, we disregard it.

George "was an Asset Protection Coach at the Chambersburg Walmart at the time of [Michael's] fall[,]" but "his Asset Protection Coach duties are performed until 5:00 p.m., and . . . at 5:00 p.m. his position becomes 'regular manager covering the store[.]'" *Doc. 32* ¶ 58–59.  Because Michael's fall occurred around 6:00 p.m., "George's role at that time was manager on duty, and as such, [his] duties included, *inter alia*, responding to customer concerns." *Id.* ¶ 60.  Further, in his role as manager on duty, "George will walk the floor, which includes the front end, the back room, and the whole store." *Id.* ¶ 61.  "[H]e walks the 'action alleys,' the main aisles of the store, and does so in a loop that takes approximately . . . 15[ ] to 20[ ] minutes."[5] *Id.* ¶ 62.

Kelly's report "was . . . George's first notice of [Michael's] fall." *Id.* ¶ 69. "[T]here was no report or evidence of the liquid Cummins' slipped and fell on prior to his fall" and, according to George, "if they knew that there was a spill, they would address it immediately." *Id.* ¶¶ 66–67.

As discussed above, Michael was met by two Walmart employees whom he accompanied to the front of the store in order to answer questions about his fall.

---

[5] Although the plaintiffs, in their counterstatement of material facts, admit the statements regarding Michael walking the floor in a loop, the plaintiffs also claim that "surveillance video . . . does not appear to show" George walking the floor as described. *Doc. 38* ¶¶ 61–62.  But the plaintiffs did not provide surveillance video to the court, so we consider this assertion to be without evidentiary support and, accordingly, we disregard it.

*See doc. 38* ¶ 25; *see also doc. 32* ¶ 25.  George was one of these employees. *Doc. 38* ¶ 77.  George took photos of the liquid that caused Michael's fall. *Doc. 32* ¶ 77. Although George testified that "the spill was contained to the location where [Michael] fell" (*id.* ¶ 76) and that he took photos of that spill (*id.* ¶ 77), according to the plaintiffs the spill was much larger, spanning multiple aisles (*doc. 38* ¶¶ 21, 41).  Thus, the photos taken are certainly of the same liquid that caused Michael's fall, but they do not necessarily depict the exact same puddle of that liquid in which Michael fell. *Id.*  The parties further dispute whether George concluded that the spill was limited to the area in which Michael fell. *Compare id.* ¶¶ 78, 79, 83 *with doc. 38* ¶¶ 78, 79, 83.

Both Kelly and George testified during their depositions about their knowledge—or lack thereof—regarding the spill prior to the events delineated above.  Kelly testified that she "was not aware of the last time aisle 28[,]" the soda aisle, "was inspected prior to [Michael's] fall[,]" nor did she—or any other employee of which she was aware—see or know about "the liquid prior to the fall." *Id.* ¶¶ 50, 54, 56.  Furthermore, Kelly "did not know [from] where the subject liquid originated[,]" nor "how long the liquid was on the floor prior to [Michael's] fall[.]" *Id.* ¶¶ 53, 57.

Likewise, George "had not seen the liquid before being notified that [Michael] had fallen." *Doc. 38* ¶ 70.  George also did not know when "the liquid

came to be on the floor[.]" *Id.* ¶ 71.  Furthermore, George "did not know how the liquid got on the floor, nor where it originated from." *Id.* ¶ 73.  He theorized, however, that 'it could have been fruit punch, that may have been spilled from a cup 'or something.'" *Id.* ¶ 80.  George was certain, however, that "there were no broken bottles or glass present in aisle 28." *Id.* ¶ 75.

According to George, "aisle 28, the soda aisle and the aisle where [Michael] fell, was not prone to more spills than other aisles." *Id.* ¶ 74.  Moreover, George was sure that "had any Walmart employee observed the liquid, they would have notified for the spill to be cleaned up" or cleaned up the spill himself or herself. *Id.* ¶¶ 72, 82.  George also "testified that he did not receive any calls at any time on December 12, 2020, informing of the presence of liquid or spills in any other area of the store, and similar to the liquid present in the soda aisle." *Id.* ¶ 81.[6]

## V.  Discussion.

Michael brings negligence claims against all defendants.  To prevail on a negligence claim under Pennsylvania law, "a plaintiff must prove 'four elements:

---

[6] The plaintiffs "deny" this statement. *Doc. 38* ¶ 81.  But they proffer only testimony regarding a surveillance video that may show a machine used for cleaning up (a "scrubber") in another aisle. *Id.*  They do not deny that George testified to not receiving calls, nor do they offer evidence that George received any *calls* about another spill, whether further clean up took place in the store or not. *See id.*

(1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual damages.'" *Tameru v. W-Franklin, L.P.*, 350 Fed. Appx. 737, 739 (3d Cir. 2009) (quoting *Swift v. Northeastern Hospital of Philadelphia*, 456 Pa.Super. 330, 335 (Pa. Super. Ct. 1997)).  Tamera brings loss-of-consortium claims against all defendants. "Under Pennsylvania's common law, a loss of consortium claim is intended to compensate one for the 'loss of the services, society, and conjugal affection of one's spouse.'" *Adam C. v. Scranton School Dist.*, No. 3:07-CV-532, 2011 WL 996171, *7 (M.D. Pa. Mar. 17, 2011) (quoting *Smalls v. Pittsburgh-Corning Corp.*, 843 A.2d 410, 417 (Pa. Super. 2004) (itself quoting *Anchorstar v. Mack Trucks, Inc.*, 533 Pa. 177, 180, 620 A.2d 1120 (1993))).  Thus, a loss of consortium claim is a "derivative spousal claim"; that is, it is "depend[e]nt on the success of the underlying claim asserted by [the] injured [spouse]." *Thomas v. Shutika*, No. 4:12-CV-692, 2012 WL 4050005, *2–3 (M.D. Pa. Aug. 24, 2012) (quoting *Pahle v. Colebrookdale Twp.*, 227 F.Supp.2d 361, 374–75 (E.D. Pa. 2002)).  Accordingly, we focus, as the parties do in their briefs, on Michael's negligence claims.

"The standard of care a landowner owes to a person who enters the property depends on whether the person entering is a trespasser, licensee, or invitee." *Pickett v. Target Corporation*, NO. 3:20-237, 2021 WL 5163220, *3 (M.D. Pa. Nov. 5, 2021) (citing *Carrender v. Fitterer*, 503 Pa. 178, 184 (Pa. 1983)).  Here,

Michael was an invitee, or "business visitor," on the defendants' property. *Cf Grantham v. U.S.*, No. 06-5056, 2008 WL 4083922, *7 (E.D. Pa. Aug. 28, 2008) ("Pennsylvania law defines the term 'invitee' as follows: (1) An invitee is either a public invitee or a business visitor; (2) A public invitee is a person who is invited to enter or remain on land as member of the public for a purpose for which the land is held open to the public; (3) A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of land.").  Thus, the defendants owed Michael the following duty of care:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitee, and
> (b) should expect that they will not discover or realize the danger or will fail to protect themselves against it, and
> (c) fails to exercise reasonable care to protect them against the danger.

*Pickett*, 2021 WL 5163220 at *3 (cleaned up) (quoting Restatement (Second) of Torts § 343 (1965)).

"When the evidence indicates that the condition was created by a person other than those the landowner is accountable for, a jury may not consider the landowner's liability without sufficient proof of actual or constructive notice of the condition." *Id.* (citing *Farina v. Miggys Corp. Five & Six*, NO. 3:09cv00141, 2010

WL 3024757, 15 *5 (M.D. Pa. July 29, 2010)).  Specifically, "the plaintiff[ ] ha[s] to establish that the store or its agent was negligent in that the [store] had either direct or constructive *notice* of the foreign substance on the floor as a potentially dangerous condition." *David v. Pueblo Supermarket of St. Thomas*, 740 F.2d 230, 233 (3d Cir. 1984) (citing Restatement (Second) of Torts § 343).  "The issue of prior notice to the store, either actual or constructive, of an unreasonable risk of harm is more difficult to establish than establishing the presence of a foreign substance on the floor." *Canton v. Kmart Corp.*, 470 Fed. Appx. 79, 83 (3d Cir. 2012) (quoting *David*, 740 F.2d at 234) (internal quotations omitted).  Rather, a plaintiff must show actual or constructive notice.  "Actual notice exists if the store had been warned about the condition of the spill on the floor beforehand." *Id.* Whereas a plaintiff can "show constructive notice by demonstrating that the floor condition had existed for such a length of time that the storeowner, in the exercise of ordinary care, should have been aware of the condition." *Id.* (citing *David*, 740 F.2d at 236).

The parties agree that there is not evidence that Walmart had actual knowledge of the liquid in which Michael fell ("the spill" or "the liquid"). *See doc. 34* at 13–16; *see also doc. 37* at 1 ("The dispositive issue raised by Defendants is whether there is sufficient evidence to support a jury question on the issue of

constructive notice"). The question that remains, then, is whether Walmart had constructive notice of the spill.

The defendants argue that Michael "has not presented any evidence as to when the liquid came to be on the floor" or "identifying the source of the liquid." *Doc. 34* at 18. And, according to the defendants, the lack of such evidence is fatal to Michael's negligence claims. *Id.* To bolster this argument, the defendants point to photographs that allegedly show the spill in which Michael fell. *Id.* at 18–19. The defendants argue that the condition of the spill "as depicted" in the photographs does not suggest "that the liquid was on the floor for any appreciable amount of time" because of the lack of "dirt/dust/grime, footprints or any evidence of disturbance[.]" *Id.* at 19. We do not consider any arguments based solely on the photographs, however, because, as discussed above, the parties dispute whether those photographs show the actual place where Michael fell or another puddle of the same liquid. The defendants further argue that Michael testified "that he did not know how the liquid came to be on the floor or for how long" and, thus, he cannot "establish that Walmart had constructive notice of the" spill. *Id.* at 20.

The plaintiffs counterargue that we should look to "the characteristics" of the spill to determine constructive notice, specifically "proximity, conspicuity, and longevity." *Doc. 37* at 4 (quoting *Robbins v. Sam's East, Inc.*, No. 21-20050, 2021 WL 3713543, *4 (5th Cir. Aug. 20, 2021)) (internal quotation marks omitted). The

17

plaintiffs state that the presence of employees in various aisles[7] in the store filling

online shopping orders demonstrates proximity, and the spill spanning "several

aisles of the store" shows conspicuity. *Doc. 37* at 4.  The plaintiffs further argue

that the "tracking" of the spill throughout multiple aisles demonstrates that the spill

was "present for a longer time than just a few minutes." *Id.* at 5 (citing *Roberts v.*

*Kmart Corp.* No. 8-90, 2011 WL 2975886, *7 (D. VI. July 21, 2011)).  Also,

according to the plaintiffs, "the duration required to find constructive notice for a

spill that spans several aisles of the store is significantly less than the duration

required to be shown of a small spill in a single aisle." *Id.* (citing *Saldana v. Kmart*

*Corp.*, 260 F.3d 228, 234 n.3 (3d Cir. 2001)).  Finally, the plaintiffs point to the

surveillance video to show that Walmart employees cleaned up other aisles after

Michael fell, "corroborat[ing] [the] [p]laintiffs' testimony regarding the extent of

the spill[.]" *Id.*  Because the plaintiffs did not provide this surveillance video to the

Court, however, we will not consider this final argument.

 "Courts rely on a multitude of factors to determine constructive notice,

including 'the number of persons using the premises, the frequency of such use, the

---

[7] Oddly, the plaintiffs point to the presence of "Walmart employees walking *the aisle where the spill was found*," (*doc. 37* at 4) (emphasis added), but evidence of that was not included in the statement of material facts or counter material facts. *See generally docs. 32, 34*.  Rather, Michael saw some employees in various aisles collecting items to fulfill online orders. *Doc. 38* ¶ 22.  Accordingly, we give no weight to an argument that employees were in the very aisle in which Michael fell or in the other aisles across which the spill allegedly spanned.

nature of the defect, its location on the premises, its probable cause, and the

opportunity which defendant, as a reasonably prudent person, had to remedy it."

*Felix v. GMS, Zallie Holdings, Inc.*, 837 F.Supp.2d 430, 437 (E.D. Pa. 2011)

(quoting *Hagan v. Caldor Dep't Stores, Inc.*, No. 89-7810, 1991 WL 8429, at *4

(E.D. Pa. Jan. 28, 1991)).  "'[O]ne of the most important factors to be taken into

consideration is the time elapsing between the origin of the defect or hazardous

condition and the accident.'" *Pickett*, 2021 WL 5163220 at *3 (quoting *Vanchure

v. Wegmans Food Markets, Inc.*, 2014 WL 1746844, at *6 (M.D. Pa. May 1,

2024)) (itself quoting *Neve v. Insalaco's*, 771 A.2d 786, 791 (Pa. Super. Ct. 2001)).

"The duration of the hazard is important because if a hazard only existed for a very

short period of time before causing any injury, then the possessor of the land, even

'by the exercise of reasonable care,' would not discover the hazard, and thus would

owe no duty to protect invitees from such a hazard." *Felix*, 827 F.Supp.2d at 437

(citing Restatement (Second) of Torts § 343).

   "Normally, the evaluation of whether [the defendant] had constructive notice

of a condition is an inquiry for the jury." *Pickett*, 2021 WL 5163220 at *4 (citing

*Craig v. Franklin Mills Assoc., L.P.*, 555 F.Supp.2d 547, 550 (E.D. Pa. 2008)).

"However, where the evidence presented requires a jury to rely on 'conjecture,

guess or suspicion,' the court is to make such a determination." *Id.* (citing *Franklin

Mills Assoc., L.P.*, 555 F.Supp.2d at 550)).  For example, courts will grant

summary judgment to the defendant where the plaintiff has no evidence of "the duration of time a spill remained on the floor prior to an accident," finding that "constructive notice of the spill cannot be inferred." *Hower v. Wal-Mart Stores, Inc.*, No. 08-1736, 2009 WL 1688474, *4 (E.D. Pa. June 16, 2009) (collecting cases).

Here, the plaintiffs fail to present evidence as to how long the spill was on the floor.  The plaintiffs do not point to evidence of the condition of the liquid prior to Michael's fall.  The plaintiffs do not show that the liquid had dried, *see Craig*, 555 F.Supp.2d at 553 ("A jury can infer from a dried puddle of soda that a spill has existed for a certain duration because the soda would not dry inside a bottle or cup, but rather only after it was spilled."), showed evidence of being walked through, *see Hower*, 2009 WL 1688474 at *4 ("Footprints or tracking in the spilled substance is evidence of temporal duration and can support a finding of constructive notice."), or contained dirt or debris, *see Craig*, 555 F.Supp.2d at 552 ("Kristina's testimony that there were no footprints or dirt near the spill provides no further guidance to the jury, and, if anything, suggests a lack of passersby walking through the spill.").

The plaintiffs argue that they show evidence of "tracking" based on the spill's presence in multiple aisles.  But to support this argument, they cite *Roberts v. Kmart Corp.*, No. 8-90, 2021 WL 2975886 (D. VI. July 21, 2011).  In *Roberts v.*

*Kmart Corp.*, the plaintiff "fell on a slippery orange substance on the floor, in the houseware area of Defendant's store." *Id.* at *3. "A witness observed a thick orange liquid going down the entire length of the aisle" and "[a]nother witness testified that there were 'sticky sounds' on the bottom of people's shoes as they were walking." *Id.* Moreover, the plaintiff "noticed marks, like 'car tracks,' going through the liquid on the floor" and "observed two store employees in the immediate vicinity at the time of her fall." *Id.* The Court concluded that "[t]aken together, and viewing the facts in the light most favorable to Plaintiff, the evidence is sufficient to create a genuine issue of material fact for the jury regarding notice." *Id.* None of these factors are present here, aside from the liquid spanning multiple aisles. And there is no evidence to suggest that the liquid was in multiple aisles because customers tracked it there rather than a single customer spilling the liquid as he or she walked by each of these aisles. This is a far cry from the confluence of factors the *Roberts* Court considered and ultimately found sufficient to create a genuine issue of constructive notice.

Furthermore, the plaintiffs argue that the fact of the spill's presence in multiple aisles somehow evidences a lengthy duration. The plaintiffs rely upon dicta in a Third Circuit case, *Saldana v. Kmart Corp*, 260 F.3d 228 (3d Cir. 2001). The Third Circuit posited that "[a] jury might, indeed, find that constructive notice requires a shorter amount of time when a spill occurs in an area of the store near an

21

employee rather than in some remote aisle far from workers' eyes." *Id.* at 234 n.3. But the plaintiffs have not shown that there were employees close to any of the aisles which the spill spanned.  Thus, the spill spanning multiple aisles is not alone enough for a jury to conclude that constructive notice "requires a shorter amount of time." *See id.*

Simply put, the plaintiffs have not met their burden.  A reasonable jury could not conclude that the defendants were on notice of the spill.  Accordingly, the defendants' motion for summary judgment will prevail.

## VI.  Conclusion.

Based on the foregoing, we will grant the defendants' motion for summary judgment (*doc. 33*).  An appropriate order follows.

*S/Susan E. Schwab*
Susan E. Schwab
United States Magistrate Judge