## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL CUMMINS, *et al.*, | : | CIVIL NO. 1:22-CV-01205 |
| | : | |
| Plaintiffs, | : | (Magistrate Judge Schwab) |
| | : | |
| v. | : | |
| | : | |
| WAL-MART STORES EAST, L.P., | : | |
| individually and d/b/a WAL-MART | : | |
| SUPERCENTER, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

### I.  Introduction.

In the instant action, the husband-and-wife plaintiffs, Michael and Tamera Cummins, bring claims for negligence and loss of consortium against a number of corporate defendants that own and operate a Walmart where Michael slipped and fell.  We previously granted the defendants' motion for summary judgment after concluding that a reasonable jury could not find that the defendants had notice of the spill.  The plaintiffs now ask us to reconsider our previous decision granting the defendants' motion for summary judgment.  Because we do not find it appropriate to vacate our decision granting summary judgment for the defendants, we will deny the plaintiffs' motion for reconsideration.

## II. Procedural History.

Michael Cummins ("Michael") and his wife, Tamera Cummins ("Tamera"), (collectively "the plaintiffs") initiated this action on August 2, 2022, by filing a complaint against Wal-Mart Stores East, L.P.; Wal-Mart Stores East, Inc.; and Wal-Mart, Inc. (collectively "the defendants"). *Doc. 1.* After conducting a case management conference with the parties, we set discovery deadlines and later extended them. *Docs. 5, 12, 28, 31.* On October 10, 2023, the defendants filed a motion for summary judgment, a brief in support thereof, and a statement of undisputed material facts. *Docs. 32–34.* The plaintiffs later filed a brief in opposition to the defendants' motion for summary judgment and a counterstatement of material facts. *Docs. 37–38.* The defendants filed a reply brief. *Doc. 39.* We granted the defendants' motion for summary judgment on July 24, 2024.[1] *Docs. 40, 41, 42.*

On August 15, 2024, new attorneys entered their appearance for the plaintiffs (*docs. 43–46*), and shortly thereafter the plaintiffs filed the present motion for reconsideration (*doc. 47*) and a brief in support thereof (*doc. 48*). The plaintiffs also filed a notice of appeal, which was stayed pending our decision regarding the motion for reconsideration. *Docs. 51–54.* The defendants filed a

---

[1] For a full recitation of the facts of this case, see our Summary Judgment Opinion. *Doc. 40.*

brief in opposition to the motion for reconsideration (*doc. 56*), the plaintiffs filed a

reply brief (*doc. 57*), and the motion is now ripe.

## III.  The Plaintiffs' Motion for Reconsideration Insofar as it is Brought Pursuant to Fed. R. Civ. P. 60(b).

Although the plaintiffs' motion for reconsideration is titled "Motion

Pursuant to Rules 59(e) and 60(b) for Reconsideration of Court's Order Granting

Summary Judgment" (*doc. 47* (capitalization altered); *see also doc. 48*), the

plaintiffs' briefs contain no argument regarding the application of Fed. R. Civ. P.

60(b) in this instance (*see docs. 48, 57*).  The plaintiffs simply state in a footnote:

> Plaintiffs also move for reconsideration under Rule 60(b) to the
> extent that it is applicable.  Rule 59(e) appears to be the
> appropriate Rule under which to move for reconsideration in
> this situation, but courts also acknowledge that Rule 60(b) may
> provide grounds for altering judgment.

*Doc. 48* at 15 n.7 (citing *United States v. Fiorelli*, 337 F.3d 282, 287–88 (3d Cir.

2003)).  Although the Court of Appeals for the Third Circuit stated in *Fiorelli* that

"motions for reconsideration under Federal Rules of Civil Procedure 59(e) and

60(b) serve similar functions," the Court also pointed out that "each has a

particular purpose" and that "the function of the motion, and not the caption,

dictates which Rule is applicable." *Fiorelli*, 337 F.3d at 287–88.  Here, the

plaintiffs argue that "[t]he basis for reconsideration in this case is to allow the

Court to correct the unfairness of disregarding the surveillance video, to which

3

both parties cited in their briefs, and to correct clear error of law." *Doc. 48* at 14.

The plaintiffs do not provide argument relevant to the bases for reconsideration

provided by Fed. R. Civ. P. 60(b).[2] *See generally id.* As such, insofar as the

plaintiffs bring their motion for reconsideration pursuant to Fed. R. Civ. P. 60(b),

we will deny it.

We also note that the defendants argue that to the extent the plaintiffs'

motion for reconsideration is based on Fed. R. Civ. P. 60(b) it "must be dismissed"

in accordance with this court's local rules. *Doc. 56* at 7. Local Rule 7.10 requires

all motions for reconsideration, except motions to alter or amend judgment brought

pursuant to Fed. R. Civ. P. 59, to "be accompanied by a supporting brief and filed

---

[2] Federal Rule of Civil Procedure 60(b) provides:
On motion and just terms, the court may relieve a party or its
legal representative from a final judgment, order, or proceeding
for the following reasons:
(1) mistake, inadvertence, surprise, or excusable neglect;
(2) newly discovered evidence that, with reasonable diligence,
could not have been discovered in time to move for a new trial
under Rule 59(b);
(3) fraud (whether previously called intrinsic or extrinsic),
misrepresentation, or misconduct by an opposing party;
(4) the judgment is void;
(5) the judgment has been satisfied, released, or discharged; it is
based on an earlier judgment that has been reversed or vacated;
or applying it prospectively is no longer equitable; or
(6) any other reason that justifies relief.
Fed. R. Civ. P. 60(b).

within fourteen (14) days after the entry of the order concerned." M.D. Pa. L.R.

7.10.  The plaintiffs did not address the defendants' timeliness argument in their

reply brief. *See generally doc. 57*.  We do not reach the defendants' timeliness

argument, however, because, as discussed above, we deny the motion for

reconsideration insofar as it is brought under Fed. R. Civ. P. 60(b) on other

grounds.


## IV.  Legal Standard – Federal Rule of Civil Procedure 59(e).

"The purpose of a motion for reconsideration is to correct manifest errors of

law or fact or to present newly discovered evidence[.]" *Harsco Corp. v. Zlotnicki*,

779 F.2d 906, 909 (3d Cir. 1985).  "The scope of a motion for reconsideration . . .

is extremely limited." *Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. 2011).  "A

proper Rule 59(e) motion therefore must rely on one of three grounds: (1) an

intervening change in controlling law; (2) the availability of new evidence; or

(3) the need to correct clear error of law or prevent manifest injustice." *Lazaridis v.

Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010).

Mere disagreement with the court, however, does not translate into a clear

error of law or fact. *See Petruzzi's, Inc. v. Darling-Delaware Co., Inc.*, 983 F.Supp.

595, 611 (M.D. Pa. 1996).  "A motion for reconsideration is not a tool to relitigate

and reargue issues which have already been considered and disposed of by the

court." *Id.* "Nor is it to be used to put forth additional arguments which could have been made but which the party neglected to make before judgment." *Waye v. First Citizen's Nat'l Bank*, 846 F. Supp. 310, 314 (M.D. Pa. 1994), *aff'd*, 31 F.3d 1175 (3d Cir. 1994). Moreover, in the interest of finality, courts should grant motions for reconsideration sparingly. *Rottmund v. Continental Assurance Co.*, 813 F. Supp. 1104, 1107 (E.D. Pa. 1992).

## V. Discussion.

### A. We will not consider those of the plaintiffs' arguments regarding the defendants' motion for summary judgment which were not raised previously.

The plaintiffs' brief in opposition to the defendants' motion for summary judgment was short, containing meager arguments and misstatements of the record.[3] *See doc. 37.* Here, with new counsel on board, the plaintiffs' brief in support of their motion for reconsideration impermissibly consists of arguments which were not included in their earlier sparse brief in opposition to the motion for

---

[3] In their brief in opposition to the motion for summary judgment, the plaintiffs pointed to the presence of "Walmart employees walking *the aisle where the spill was found*." *Doc. 37* at 4 (emphasis added). In reality, however, the record reflected that Michael saw some employees in various aisles collecting items to fulfill online orders—not the aisles where the spill was found. *Doc. 38* ¶ 22. As a result, we gave no weight to the plaintiffs' argument that employees were in the very aisle in which Michael fell. *Doc. 40* at 18 n.7. The plaintiffs now acknowledge this "misstate[ment]." *Doc. 48* at 3 n.1.

summary judgment. *See doc. 48 passim*.  Specifically, in their brief in support of the motion for reconsideration, the plaintiffs posit for the first time that the surveillance video contains evidence about how long the spill was present on the floor. *Doc. 48* at 6 n.3 ("At the location where the spill cleanup takes place, the video shows a store patron apparently stepping away from the spill . . . a couple minutes before Plaintiff [sic] falls, providing additional evidence that the spill was on the floor and visible for some time before Plaintiff fell.  The video also shows people walking through the area of the spill before and after Plaintiff fell . . . suggesting that there would have been track marks throughout the store from the spill.").  We were provided with no such assertions at the motion for summary judgment stage.  Moreover, in their brief in support of the motion for reconsideration the plaintiffs argue that there was a "large quantity of liquid in many of the store aisles." *Doc. 48* at 9.  But in their brief in opposition to the motion for summary judgment and counterstatement of material facts, there is no such assertion. *See doc. 37* at 4 ("the testimony of both Plaintiffs is that the spill was found in several aisles of the store").  Similarly, in their brief in support of the motion for reconsideration the plaintiffs argue that the extent of the spill impacts the proximity of the employees (*doc. 48* at 11 "What if the spill spanned more than half the store? Wouldn't that then give rise to the inference that there was a likelihood that an employee was in an aisle with the spill?"); in their brief in

opposition to the motion for summary judgment, however, the plaintiffs asserted, incorrectly, that the record reflected that employees were "walking the aisle where the spill was found" and this demonstrates proximity (*doc. 37* at 4).

"A motion for reconsideration is not an appropriate vehicle to raise new arguments." *Keahey v. Federated Life Ins. Co.*, No. 20-6419, 2021 WL 5866877, *3 (E.D. Pa. Dec. 10, 2021) (citing *Elgert v. Siemens Indus., Inc.*, No. 17-cv-1985, 2019 WL 3976409, at *5 (E.D. Pa. Aug. 22, 2019)); *see also Kyko Global, Inc. v. Prithvi Information Solutions Ltd.*, No. 2:18-cv-01290-WSS, 2020 WL 3654951, *6 n.4 ("Motions for reconsideration are ordinarily not the appropriate vehicle for introducing new arguments."); *see also Shadie v. Hazelton Area School Dist.*, No. 3:10-2121, 2013 WL 3102491, *3 (M.D. Pa. June 18, 2013) ("The District cannot use a motion for reconsideration to present additional arguments not raised at summary judgment.").  In other words, "[a] party's failure to present his strongest case in the first instance does not entitle him to a second chance in the form of a motion to amend" or for reconsideration. *All West Pet Supply Co v. Hill's Pet Products Division, Colgate-Palmolive Company*, 847 F.Supp. 858, 860 (D. Kan. 1994).

We thus do not consider the new arguments raised by the plaintiffs in their brief in support of the motion for reconsideration. *See doc. 48.*

**B.  The Plaintiffs' Failure to Provide the Surveillance Video for Review on Summary Judgment is Not Grounds to Reconsider Our Summary Judgment Decision.**

In accordance with Local Rule 56.1, on summary judgment the defendants filed a statement of material facts (*doc. 32*), and the plaintiffs filed a response (*doc. 38*).  In our opinion on the motion for summary judgment, where the facts were undisputed, we cited to the defendants' statement of material facts. *Doc. 40*.  In accordance with our duty to "construe all facts and inferences in favor of the nonmoving party[,]" *Peroza-Benitez v. Smith*, 994 F.3d 157, 164 (3d Cir. 2021) (quoting *Santini v. Fuentes*, 795 F.3d 410, 419 (3d Cir. 2015)), where the plaintiffs disputed a fact set forth in the defendants' statement of material facts and they cited record evidence creating a genuine factual dispute, we cited to the plaintiffs' version of the fact. *Doc. 40*.

In the plaintiffs' counterstatement of material facts, the plaintiffs sometimes cited a "surveillance video" as support for their assertions. *See, e.g., doc. 38* ¶¶ 78, 79, 81.  The plaintiffs, however, neglected to provide the court with the surveillance video. *See docs. 37, 38.*  In their reply brief, the defendants pointed this out to the plaintiffs: "Plaintiffs' [sic] do not include any video footage or snap shots of the claimed footage depicting the evidence they are alleging exists." *Doc. 39* at 2.  Despite this clear notice, however, the plaintiffs did not provide the surveillance video or otherwise respond to the defendants' reply brief or seek to do

9

so (*doc. 39* at 2) (arguing that we should "dismiss[] out of hand" the plaintiffs'

arguments based on the surveillance video). *See docket generally*.  We thus

considered the motion for summary judgment without the surveillance video.

The plaintiffs argue that reconsideration is warranted because we "decided

the motion on a limited record rather than considering the video cited by the

parties[.]" *Doc. 48* at 6 (capitalization altered).  The plaintiffs do not provide any

reasoning for why they did not file the surveillance video with their

counterstatement of material facts or provide it to the court after the defendants

alerted them to the omission. *See generally id.*  According to the plaintiffs, we

"could have, and should have, requested that the parties submit the video." *Id.*  The

plaintiffs argue that reconsideration under Fed. R. Civ. P. 59(e) is proper "to

correct clear error of law"—in other words, "to correct the unfairness of

disregarding the surveillance video[.]" *Id.* at 14.

The defendants disagree. *Doc. 56*.  In the defendants' view, the plaintiffs

"were required to submit" the surveillance video "to the Court[,]" and the

plaintiffs' failure to do so opened the door for us to choose which option presented

by Fed. R. Civ. P. 56(e) was appropriate in this instance. *Doc. 56* at 11.  Moreover,

according to the defendants, "[w]hile Plaintiffs criticize the Court and cite to what

the Court could have done to obtain the video, Plaintiffs provide no explanation as

to why they failed to file the video of record in the first instance." *Id.* at 9.

10

According to Fed. R. Civ. P. 56(e):

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
> (1) give an opportunity to properly support or address the fact;
> (2) consider the fact undisputed for purposes of the motion;
> (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or
> (4) issue any other appropriate order.

Here, where the plaintiffs supported their counterstatement of material fact only with reference to the surveillance video, we found that the plaintiffs failed to properly address the defendants' assertion of facts. *See doc. 40*. The plaintiffs were alerted by the defendants' reply brief (*doc. 39*) to their failure to provide the surveillance video and still chose not to supplement the record with the surveillance video (*see docket generally*). Moreover, the plaintiffs did not appear to depend upon the surveillance video in their brief in support, aside from a general argument that the surveillance video "corroborates Plaintiffs' testimony regarding the extent of the spill and refutes Defendants['] testimony"—an argument that is unavailing at summary judgment as we need not determine credibility of testimony at this procedural posture. *Doc. 37* at 5. The plaintiffs did not otherwise reference the surveillance video or the facts which we disregarded because, without the surveillance video, they lacked supporting evidence. *See doc. 37*.

Accordingly, we chose to follow Fed. R. Civ. P. 56(e)(2), considering those disputed facts which were supported only with references to the surveillance video to be undisputed for purposes of the summary judgment motion. *See doc. 40*. And when we concluded that the defendants were entitled to summary judgment based on the record as we were provided it, we followed Fed. R. Civ. P. 56(e)(3) and granted summary judgment as to the defendants. *See id.* Because we did not err in applying our discretion in line with the Federal Rules of Civil Procedure, we will deny the motion for reconsideration on the basis that we did not instruct the plaintiffs to provide the video.

### C. We Properly Applied the Parties' Burdens on Summary Judgment.

As we stated in our Summary Judgment Opinion:

> The moving party bears the initial responsibility of informing the court of the basis for its [summary judgment] motion and identifying those portions of the record that demonstrate the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). With respect to an issue on which the nonmoving party bears the burden of proof, the moving party may discharge that burden by "'showing'—that is, point out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.
>
> Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleading; rather, the nonmoving party must show a genuine dispute by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including

those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c).  If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial[,"] summary judgment is appropriate. *Celotex*, 477 U.S. at 322.

*Doc. 40* at 3.

According to the plaintiffs' reply brief, "[t]he Court impermissibly shifted the burden of proof to Plaintiffs without Defendants first making an affirmative showing of the absence of evidence." *Doc. 57* at 5.  The plaintiffs point to cases in which the court found that the movants had not met their burden to show a lack of evidence and thus denied the motion for summary judgment. *Id.* at 5–7.  The plaintiffs argue that the instant case aligns with the cases they cite—specifically based on the defendants failing to "establish[] the absence of evidence regarding the condition of the spill" upon which Michael allegedly fell. *Id.*

Oddly, prior to the motion for plaintiffs' motion for reconsideration reply brief, the plaintiffs did not argue that the defendants had not met their initial burden as summary judgment movants; this argument was not included in their brief in opposition to the motion for summary judgment, or even in their brief in support of the motion for reconsideration. *See docs. 37, 48.*  Nevertheless, having reviewed the cases the plaintiffs cite, the defendants' summary judgment filings, and our Summary Judgment Opinion, we conclude that the defendants did, in fact,

13

meet their burden as the movants for summary judgment.  This case is distinct from those cited by the plaintiffs which had scant—if any—record evidence submitted by the movants. *See, e.g., Lee v. Mariei*, No. 3:18-CV-663, 2023 WL 6532556, *1 (M.D. Pa. July 18, 2023) ("These issues, which frequently are deemed to be fact-bound questions, are presented for our consideration by the defendants in a remarkably spare fashion without the benefit of any supporting evidentiary materials, as required by Local Rule 56.1."); *Mastalski v. Geico General Ins. Co.*, No. 20-1321, 2022 WL 17668801, *4 (W.D. Pa. Dec. 14, 2022) ("the Court finds that there is no conclusive evidence showing that Plaintiff violated the assured clear distance ahead rule.  Unlike other cases that have applied the rule, as cited, *supra*, there is no record evidence to establish the time it would have taken Plaintiff to stop her vehicle, nor is there record evidence of the distance between vehicles involved here, nor is there any expert testimony upon which the Court may rely."); *Butts v. Southwestern Energy Production Co.*, No. 3:12 CV 1330, 2014 WL 3953155, *2 (M.D. Pa. Aug. 12, 2014) ("Defendant's Statement of Facts . . . contains only nineteen paragraphs, eight of which are without any citation to the record" and the attached exhibits "total only thirty-nine pages, including coversheets and verifications"); *Cooper v. Hoover*, No. 1:CV-06-0729, 2008 WL 341639, *1 (M.D. Pa. Feb. 6, 2008) ("[the defendants' summary-judgment motion] is . . . essentially a second motion to dismiss under Fed. R. Civ. P. 12(b)(6), which

14

is not proper . . . The defendants' motion and brief simply cite to Plaintiff's complaint as the record and assert that Plaintiff has no affirmative evidence to support his claims, but . . . that is not enough").

Here, however, the defendants filed a robust statement of material facts and attached complete deposition transcripts to which they referred to support each asserted statement of fact. *See doc. 32*.  We thus proceeded to analyze whether the plaintiffs met their burden as nonmovants. *See doc. 40*.  The plaintiffs are perhaps confused by our reference to them failing to meet their burden. *See id.* at 22 ("the plaintiffs have not met their burden").  But this was not an indication of an impermissible shift of the burden from the movants to the nonmovants; rather, it was an analysis of whether the plaintiffs had met their burden to demonstrate an issue of material fact—a burden they bore after the defendants met their initial burden as described above.  We concluded that the plaintiffs did not meet their burden because even viewed in the light most favorable to the plaintiffs, with the record we were provided a reasonable jury could not conclude that the defendants were on notice of the spill. *Id.*

Thus, because we did not apply the burden incorrectly in our Summary Judgment Opinion, we will not grant the motion for reconsideration on this basis.

### D.  We Viewed the Facts in the Light Most Favorable to the Plaintiffs.

According to the plaintiffs, the court failed to view the facts in the light most favorable to the plaintiffs. *Doc. 48* at 8.  The plaintiffs posit that "[]viewed in the light most favorable to Plaintiffs, . . . there was a large quantity of liquid in many of the store aisles" rather than "a few drops as shown in the Defendants' pictures." *Id.* at 8–9.  The core of the plaintiffs' argument is as follows:

> With regard to how long the spill was on the ground before Plaintiff fell, viewed in the light most favorable to Plaintiff, the spill, which appeared to be from a shopper's leaking cart, would have taken a significant amount of time to spread throughout the store.  There's no basis to believe that a shopper ran through the store spilling liquid; rather, giving Plaintiff the benefit of reasonable inferences, the spill likely took 20 or 30 minutes to be spread down, and was on the floor for a long time before Plaintiff fell.
>
> With regard to the proximity of Walmart employees to the spill, viewed in the light most favorable to Plaintiffs, the fact that the spill covered much of the store and the fact that there were multiple Walmart employees filling online shopping orders, leads to the inference that the spill occurred in the vicinity of Walmart employees.
>
> The Court should have made these inferences in favor of Plaintiffs, if viewing the evidence in the light most favorable to Plaintiffs, but it did not.

*Id.* at 9.

The defendants counterargue that the "[p]laintiffs' argument overlooks the fact that the Court in its Memorandum viewed the facts in a light most favorable to Plaintiffs and granted them the fact that the spill spanned multiple aisles." *Id.* at 13. In the defendants' view we "removed the dispute as to the location of the spill and

afforded Plaintiffs the benefit of their argument on the size and location of the spill" as well as "regarding the characterization of the spill when it determined that the spill was likely greater and consisted of more than what was depicted in Walmart's photographs." *Id.*

In their reply brief, the plaintiffs argue that "not only must the Court accept as true the Plaintiffs' statement of disputed material facts, but the Court also must give Plaintiff the benefit of all reasonable inferences that may arise from those facts." *Doc. 57* at 5. Per the plaintiffs, "[o]nly if the Court could say as a matter of law that no spill spanning multiple aisles could ever create a jury issue would the Court then have been able to grant summary judgment for Defendants." *Id.*

In light of the parties' arguments, we find it necessary to set forth the material facts as we found them for purposes of summary judgment. As discussed above, in accordance with Fed. R. Civ. P. 56, where the facts were undisputed, we adopted the defendants' statement of material fact; where the plaintiffs disputed a fact and they cited record evidence which was submitted to the court and created a genuine factual dispute, we instead adopted the plaintiffs' version of the fact. *See doc. 40*; *see also Cieniawa v. Pall*, No. 3:17-CV-00796, 2019 WL 4256280, *5 (M.D. Pa. Sept. 6, 2019) ("the Court cannot simply credit Defendants' version of events over Plaintiff's version of events, where Plaintiff has provided more than a mere 'scintilla' of evidence that suggests a genuine dispute of a material fact"). In

our Summary Judgment Opinion we also noted that the defendants frequently

asserted in their statement of material facts that individuals "testified" to certain

information or otherwise "confirmed" or "admitted" information during their

depositions. *Doc. 40* at 6 n.1.  Where the plaintiffs admitted these statements and

the parties depended upon the statements for the truth of the matter asserted, we set

forth the underlying statements. *Id.*  Below we summarize the undisputed

statements of material fact, and we list the disputed statements of material facts,

noting the parties' disputes and our conclusions.


### 1.  Undisputed Statements of Material Fact.[4]

For purposes of summary judgment, the parties agreed on many of the facts

surrounding Michael's fall and Walmart's response.  As to the fall, the parties

agreed when it took place (the evening of December 12, 2020), where it took place

(at the Chambersburg Walmart "at the end of" the soda aisle), and what caused

Michael's fall (a pink liquid on the floor). *Doc. 40* at 6–8 (citing *doc. 32 passim*).

The parties also agreed that no one knew where the pink liquid came from. *Doc. 40*

at 8, 12–13 (citing *doc. 32* ¶¶ 20, 40, 53, 57, 73, 80).  In the statement of material

facts, the defendants pointed toward deposition testimony from both plaintiffs and

---

[4] Because these facts are undisputed, we refer only to the defendants' statement of material facts.

18

two Walmart employees, all of whom said that they were unsure where the pink liquid came from, though some proffered theories of the pink liquid's origin.[5] *Doc. 32* ¶¶ 20, 40, 53, 57, 73, 80.

---

[5] The plaintiffs now argue that the pink liquid "appeared to be from a shopper's leaking cart" and "would have taken a significant amount of time to spread throughout the store" because "there's no basis to believe that a shopper ran through the store spilling liquid[.]" *Doc. 48* at 9.  According to the plaintiffs, "giving [them] the benefit of reasonable inferences, the spill likely took 20 or 30 minutes to be spread down, and was on the floor for a long time before [Michael] fell." *Id.*  But in the plaintiffs' counterstatement of material facts, they admitted the following:

> (1) "[Michael] was unable to determine where the liquid came from" (*doc. 32* ¶ 20; *doc. 38* ¶ 20);
> (2) "[Tamera] confirmed that the substance she observed on the floor of the soda aisle was a pinkish liquid, which she believed was soda or juice that was leaking out of somebody's cart while they were walking down the aisle" (*doc. 32* ¶ 40; *doc. 38* ¶ 40);
> (3) "Kelly informed that she did not know what time the liquid on the floor of the soda aisle was spilled, nor how long the liquid was on the floor prior to [Michael's] fall" (*doc. 32* ¶ 53; *doc. 38* ¶ 53);
> (4) "Kelly testified that she did not know where the subject liquid originated from" (*doc. 32* ¶ 57; *doc. 38* ¶ 57);
> (5) "George further testified that he did not know how the liquid got on the floor, nor where it originated from" (*doc. 32* ¶ 73; *doc. 38* ¶ 73); and
> (6) "When asked about the color of the liquid, [] George noted that it was pinkish, reddish, like it could have been fruit punch, that may have been spilled from a cup 'or something'" (*doc. 32* ¶ 80; *doc. 38* ¶ 80).

In their filings related to the defendants' motion for summary judgment, the plaintiffs did not assert or argue that Tamera's "belief" should be taken as true, and because conflicting theories were all set forth as facts which were undisputed, we accepted none of these theories and instead left the origin of the liquid as unknown for purposes of summary judgment.  Even presuming that Tamera's theory that the liquid was leaked out of someone's cart while they walked is accepted as true, this

The parties also did not dispute Walmart's policies regarding spills. *Doc. 40* at 9 (citing *doc. 32* ¶¶ 47–49, 63–65).  Thus, for purposes of summary judgment, Walmart's policies were: (1) "any associate who comes across a spill on the floor is to stand guard with the spill and to alert another associate or [a] manager or [the] maintenance [department] of the spill, but the first on scene must stay with the spill until it is cleaned up"; (2) "[t]he first on scene employee would use a 'walkie' to call in the spill or would wait for another employee to walk by"; (3) "[a]ssociates are supposed to inspect any aisle that they are in"; and (4) "Walmart employees would identify and stand guard at any identified spills, even if the spill was not located in that employee's department." *Doc. 40* at 9.

For purposes of summary judgment, the parties also agreed as to much of what the Walmart employees did in response to the spill.  Specifically, it is undisputed that Debbie Kelly ("Kelly"), a Walmart employee, "was walking through the store and came upon the area where [Michael] was located after he

---

does not lead to the presumption that this process took 20 or 30 minutes, or that the liquid must have been on the floor for "a long time before [George] fell" (*doc. 48* at 9) rather than having been leaked immediately prior.  And while at summary judgment "[i]nferences should be drawn in the light most favorable to the non-moving party," *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992), we are not required to engage in rank speculation as the plaintiffs ask us to do. *Cf Plunkett v. Matthew International Corp.*, No. 2:16cv1512, 2020 WL 4431561, *1 (W.D. Pa. July 31, 2020) ("mere conjecture or speculation by the party resisting summary judgment will not provide a basis upon which to deny the motion") (citing *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382–83 n.12 (3d Cir. 1990)).

fell." *Doc. 40* at 10 (citing *doc. 32* ¶ 51). Kelly learned of Michael's fall by finding him after the fall and responded by "guard[ing] the area of the spill[.]" *Id.* (citing *doc. 32* ¶¶ 52, 55). Kelly also reported Michael's fall to management. *Id.* (citing *doc. 32* ¶ 68).

Kelly's supervisor was asset protection coach Shannon George ("George"). *Id.* (citing *doc. 32* ¶ 45). The parties did not dispute that after 5:00 p.m., George acts as "manager on duty" which includes "walk[ing] the floor" "in a loop that takes approximately . . . 15[] to . . . 20[] minutes." *Id.* at 10 n.4 (citing *doc. 32* ¶¶ 58–62). As discussed further below, the parties dispute whether this loop, in fact, occurred. Nevertheless, it is undisputed that Kelly's report "'was . . . George's first notice of [Michael's] fall'" and "'[t]here was no report or evidence of the liquid [Michael] slipped and fell on prior to his fall[.]'" *Id.* at 11 (quoting *doc. 32* ¶¶ 66–67, 69). The parties also agreed that according to George "if [the Walmart employees] knew there was a spill, they would address it immediately." *Id.* (quoting *doc. 32* ¶ 67).

The parties further agreed that George met Michael to discuss the fall. *Doc. 40* at 11–12 (citing *doc. 32* ¶ 25, 77; *doc. 38* ¶ 25). As discussed below, the parties disagree whether George was accompanied by another employee.

## 2. Disputed Statements of Material Fact.

The plaintiffs also denied certain of the defendants' statements of material fact. The disputed statements can be grouped as follows: (1) those relating to the photographs proffered by the defendants as being of the spill in which Michael fell ("the photographs"); (2) those relating to the proximity of employees to the spill prior to Michael's fall; (3) the number of Walmart employees who responded to Michael's fall; (4) Kelly's response to Michael's fall; (5) George's response to Michael's fall; and (6) the size of the spill.

### a. The Photographs.

In their statement of material facts, the defendants included photographs of pink liquid on the Chambersburg Walmart floor. *See doc. 38* ¶ 21. The defendants explained, "Mr. Cummins identified the liquid he fell on in exhibits marked as D-1 at his deposition. The photos are included here for reference[.]" *Doc. 32* ¶ 21 (internal citations omitted). The plaintiffs, however, denied this assertion, as follows:

> Denied. [Michael] identified the liquid itself as the same pink liquid on which he fell, but he did not identify the picture as the area in which he fell. [Michael] stated that, after he fell, he saw that he had smeared the liquid that caused his fall, such that after he fell there was a 'smeared puddle from where I basically rolled around on the floor trying to get up.' He described what he saw as 'it was like somebody tried to wipe it up with a rag. It was like, wiped up by me rolling around on

> the floor.'  The pictures taken by Defendants' employee do not
> show a smeared puddle, but show other puddles containing the
> same liquid.  Defendants also do not mention Plaintiff's
> testimony that the spill was found in multiple aisles of the store.

*Doc. 38* ¶ 21 (internal citations omitted).  The plaintiffs referred to deposition

testimony in support for their counterstatement of fact.  After reviewing the cited

deposition testimony, we determined that the plaintiffs' counterstatement was

supported by record evidence and, accordingly, we adopted the plaintiff's version

of the fact. *Doc. 40* at 12 ("the photos taken are certainly of the same liquid that

caused Michael's fall, but they do not necessarily depict the exact same puddle of

that liquid in which Michael fell.").

   Relatedly, the plaintiffs also admitted in part and denied in part the

defendants' assertion that "[Tamera] confirmed that the liquid depicted" in the

photographs marked as exhibit D-1 "was the liquid she believed [Michael] slipped

and fell on." *Doc. 32* ¶ 41.  The plaintiffs explained:

> [Tamera] was asked to identify the liquid as the type of liquid
> on which her husband fell.  She was not asked if the liquid
> depicted in the pictures was the very puddle on which he fell.
> As described above, the puddles in the picture do not reflect
> Plaintiff's [sic] testimony that the spot where he fell left a
> "smeared" puddle.  Moreover, [Tamera] testified that the spill
> was more extensive than what is shown in the pictures.

*Doc. 38* ¶ 41 (citations omitted).  We adopted the plaintiffs' version of this fact in

our Summary Judgment Opinion. *Doc. 40* at 12 ("George took photos of the liquid

that caused Michael's fall.  Although George testified that 'the spill was contained

to the location where [Michael] fell' and that he took photos of that spill, according to the plaintiffs the spill was much larger, spanning multiple aisles. Thus, the photos taken are certainly of the same liquid that caused Michael's fall, but they do not necessarily depict the exact same puddle of that liquid in which Michael fell." (internal citations omitted)).

For similar reasons, the plaintiffs denied the defendants' assertion that "George stated that the spill was contained to the location where [Michael] fell." *Doc. 38* ¶ 76; *doc. 32* ¶ 76. The plaintiffs admitted that George did testify exactly as the defendants described, but the plaintiffs denied the truth of the matter because the photographs George took did not "show the location of the fall or the full extent of the spill." *Doc. 38* ¶ 76. The plaintiffs also admitted the defendants' statement that "George testified that he was the individual who took the photographs of the liquid" but elaborated that "there is contradictory testimony regarding when George took the pictures" either with Michael present or without. *Doc. 32* ¶ 77; *doc. 38* ¶ 77. The contradictory testimony went to whether the photos were, in fact, of the exact puddle in which Michael fell. *See doc. 38* ¶ 77. Again, we accounted for this dispute by finding, for purposes of summary judgment, that the photos were of the same liquid that caused Michael's fall but not the same puddle in which Michael fell. *Doc. 40* at 12.

Finally, we note that where the defendants made arguments based on the photographs, we did not consider them. *Doc. 40* at 17 ("The defendants argue that the condition of the spill 'as depicted' in the photographs does not suggest 'that the liquid was on the floor for any appreciable amount of time' because of the lack of 'dirt/dust/grime, footprints or any evidence of disturbance[.]' We do not consider any arguments based solely on the photographs, however, because as discussed above, the parties dispute whether those photographs show the actual place where Michael fell or another puddle of the same liquid." (alteration in original) (internal citations omitted)).

### b. Employee Proximity to Michael's Fall.

The defendants also asserted that "[Michael] testified that no Walmart employee was nearby when he fell." *Doc. 32* ¶ 22. The plaintiffs admitted this fact, but added "[b]y way of further answer, [Michael] testified that there were Walmart employees in the aisles of the store collecting items from the shelves to fill online orders." *Doc. 38* ¶ 22. The plaintiffs cited a portion of Michael's deposition testimony to support this assertion. *See id.* We reviewed this portion of Michael's deposition testimony and the portion cited by the defendants. We then adopted the defendant's statement of fact as admitted and noted the additional context provided by the plaintiffs. *Doc. 40* at 6, 7 ("As the plaintiffs walked

through the store, Michael saw some employees in various aisles collecting items to fulfill online orders. . . . Michael and Tamera also did not see any Walmart employees in the soda aisle.") (citing *doc. 32-1* at 60–61).

The defendants also asserted that "[Tamera] also informed that she did not recall seeing any Walmart employees." *Doc. 32* ¶ 32. The plaintiffs admitted this assertion but added "[Tamera] stated that she did not see any Walmart employees in the aisle. She wasn't asked if there were employees walking through the store aisles at the time[.]" *Doc. 38* ¶ 32. We adopted the defendants' version of this fact with the additional nuance provided by the plaintiffs. *Doc. 40* at 6, 7 ("As the plaintiffs walked through the store, Michael saw some employees in various aisles collecting items to fulfill online orders. . . . Michael and Tamera also did not see any Walmart employees in the soda aisle.") (citing *doc. 32-1* at 60–61).

In their brief in opposition to the motion for summary judgment, the plaintiffs point to the presence of "Walmart employees walking the aisle where the spill was found." *Doc. 37* at 4. But there was no evidence of same. *See generally docs. 32, 34.* As described above, we adopted the plaintiffs' supported fact that Michael saw employees in various aisles of the store collecting items to fulfill online orders and neither Michael nor Tamera saw any employees in the soda aisle. *Doc. 40* at 6, 7.

26

### c. Number of Walmart Employees Who Responded to the Fall.

As mentioned above, the parties dispute how many Walmart employees responded to Michael's fall. *See doc. 32 ¶ 25; see also doc. 38 ¶ 25.* The defendants stated:

> The Walmart man[a]ger(s) who responded to [Michael] did not have the Walmart investigation IPad with them when they first made contact, and they asked [Michael] to accompany them to another area of the store where the IPad was present, so as to log his statement of how the accident occurred.

*Doc. 32 ¶ 25.* The plaintiffs responded as follows:

> Admitted in part; denied in part. The testimony regarding Plaintiffs' contact with store employees is contradictory at times. Plaintiff testified that he was met by two, male Walmart employees. Plaintiff also testified that walked [sic] to the front of the store with the two employees so that they could get the iPad used to [sic] his statement, that one that was also used to take the pictures. If this is accurate, then the pictures were not taken while Plaintiff was present to describe the spot where he fell, but were taken after the fact by a manager unfamiliar with the location of the fall who found pink liquid near where he believed the spill to have taken place. In contrast, Defendant's employee states that he first went to get the iPad and then met Plaintiff at the scene of the fall and took pictures. Defendant's employees do not recall there being a second male employee at the scene. This is significant also because Plaintiff's testimony is that the two male employees discussed the fact that the spill was found across multiple aisles, while Defendant's employee denies that such a conversation took place.

*Doc. 38 ¶ 25.*

We construed the plaintiffs' counterstatement of material fact as admitting that Michael walked to another area of the store with Walmart employees and denying any indication that it was only one employee rather than two. *Doc. 40* at 8–9 ("Michael 'was met by two, male Walmart employees'[] (*doc. 38* ¶ 25) but they 'did not have the Walmart investigation IPad with them . . . [so] they asked [Michael] to accompany them to another area of the store where the IPad was present, so as to log his statement of how the accident occurred' (*doc. 32* ¶ 25)" (alteration in original) (footnote omitted)). We also noted that, as the plaintiffs stated, "according to Michael, the two employees 'discussed the fact that the spill was found across multiple aisles[.]" *Doc. 40* at 8 n.2 (citing *doc. 38* ¶ 25) (alteration in original). The only portion of the plaintiffs' counterstatement that we did not credit was the assertion that "the [defendants'] employees do not recall there being a second male employee at the scene[,]" because the plaintiffs did not cite the record to support this assertion. *Id.*

### d. Kelly's Response to Michael's Fall.

The defendants posited in their statement of material facts that "Kelly confirmed that the subject incident occurred in one of the soda aisles, which she believed to be aisle 28 from the provided pictures." *Doc. 32* ¶ 46. The plaintiffs denied this assertion and countered that "Kelly testified that she did not know the

exact area where the fall took place." *Doc. 38* ¶ 46.  But the plaintiffs cited to

Kelly's deposition as support for this assertion and we did not find the referenced

testimony in or around the portion of testimony to which the plaintiffs cited. *See*

*doc. 32-3* at 13–19.  But the portion of deposition testimony cited by the

defendants does not fully support the defendants' version of this fact either. *See*

*doc. 32-3* at 23.  In the deposition, Kelly is asked whether it is her understanding

that the incident occurred "in and around one of the soda aisles within Walmart."

*Id.* at 23 ¶¶ 11–13.  Kelly responds, "From the pictures, yes, and aisle 28, yes." *Id.*

at 23 ¶ 14.  Kelly thus based her response on the pictures rather than her memory,

and we have already established that it is not undisputed that the pictures depict the

exact puddle in which Michael fell.  Accordingly, faced with a statement of

material fact without evidentiary support and a counterstatement of material fact

similarly without evidentiary support, we omitted this fact entirely. *See doc. 40*

*passim*.

The defendants also asserted, and the plaintiffs admitted, that "Kelly

testified that she guarded the area of the spill after she was notified of the

incident." *Doc. 32* ¶ 52.  The plaintiffs added:

> By way of further answer, [] Kelly testified that she did not see
> the spill upon arriving at the scene because she did not inspect
> the area.  Once there, although she 'guarded' the area, she did
> not look at the spill at any time while she guarded the area.  In
> sum, although she was the first on the scene, she never
> investigated, never looked at the spill, and was not the one who

took the pictures (nor does she have any real recollection of the
incident to contradict the testimony of the Plaintiffs).

*Doc. 38* ¶ 52 (internal citations omitted).  Because this assertion was supported by

the record, we adopted not only the defendants' statement of fact as to this point

but also the additional information added by the plaintiffs. *Doc. 40* at 10 ("Kelly

then 'guarded the area of the spill[.]' 'Kelly testified that she did not see the spill

upon arriving at the scene because she did not inspect the area,' and 'although she

"guarded" the area, she did not look at the spill at any time while she guarded the

area.'" (internal citations omitted)).


### e.  George's Response to Michael's Fall.

The defendants stated, and the plaintiffs admitted, that "[a]fter 5:00 p.m.,

[] George will walk the floor, which includes the front end, the back room, and the

whole store[,]" specifically, "he walks the 'action alleys,' the main aisles of the

store, and does so in a loop that takes approximately fifteen (15) to twenty (20)

minutes." *Doc. 32* ¶¶ 61, 62.  Although the plaintiffs admitted these statements,

they also provided further information, as follows:

> [T]he surveillance video which covers the hour prior to the fall
> does not appear to show [] George walking the floor in
> contradiction to his testimony.  While not directly relevant to
> the issue of constructive notice, if he did not perform his duties
> in walking the aisles, that would be relevant to a finding that he
> acted negligently that day.

*Doc. 38* ¶¶ 61, 62.  Because the video was not provided to the court, as discussed

above, we did not adopt this additional fact in our recitation of material facts. *Doc.*

*40* at 10 n.4, 11 n.5.  Moreover, despite teasing a legal argument regarding

George's failure to walk the aisles in their counterstatement of material facts, the

plaintiffs did not bring such an argument to fruition; the plaintiffs did not mention

George's alleged failure to walk the aisles at all in their brief in opposition. *See*

*doc. 37*.

The defendants also asserted that "upon arriving at the scene, [] George

confirmed that he saw the liquid [Michael] slipped and f[e]ll on for the first time,

and stated that it was the first time he knew of the spill." *Doc. 32* ¶ 70.  But the

plaintiffs admitted this statement in part and denied it in part. *Doc. 38* ¶ 70.  The

plaintiffs explained that they admitted that "George testified that he had not seen

the liquid before being notified that [Michael] had fallen." *Id.*  The plaintiffs

denied, however, that "George observed the specific puddle on which [Michael]

fell" because "George testified that he 'assumed' the liquid he took a picture of

was the liquid that caused the fall." *Id.*  We adopted the plaintiffs' version of this

fact in our Summary Judgment Opinion, stating that "George 'had not seen the

liquid before being notified that [Michael] had fallen.'" *Doc. 40* (quoting *doc. 38*

¶ 70).  As discussed above, we also accounted for the plaintiffs' position that the

photo did not depict the actual puddle in which Michael fell.

31

### f. Size of the Spill.

As we noted in our Summary Judgment Opinion, "[t]he parties . . . dispute[d] whether George concluded that the spill was limited to the area in which Michael fell." *Doc. 40* at 12 (citing *doc. 32* ¶¶ 78, 79, 83; *doc. 38* ¶¶ 78, 79, 83). According to the defendants, "[a]s part of his investigation, [] George determined that the spill was only present in approximately a quarter of the soda aisle[,]" and "George stated that the spill did not continue into the aisle or alleyway where the meat department is." *Doc. 32* ¶¶ 78, 79. The defendants also stated as fact that "George testified that he did not receive any calls at any time on December 12, 2020, informing of the presence of liquid or spills in any other area of the store, and similar to the liquid present in the soda aisle." *Id.* ¶ 81. Moreover, the defendants stated that George "summarized" in his deposition testimony "that he did not have any notice of the subject liquid prior to [] Kelly calling in the code white, he was not aware of any other Walmart employee being aware of the subject liquid prior to [] Kelly calling in the code white, [] George was not notified of liquid being present in any other aisle of the store, nor did [] George become aware of liquid being present in any other aisle of the store." *Doc. 32* ¶ 83.

The plaintiffs denied each of the above statements. The plaintiffs cited Michael's deposition testimony "that [] George and another Walmart employee saw the spill across multiple aisles and arranged for the cleanup of the spill

throughout the store." *Doc. 38* ¶ 78.   The plaintiffs also cited the surveillance video, claiming that it shows "Walmart employees cleaning up a spill in other parts of the store in the minutes after the fall." *Doc. 38* ¶ 78, 79, 81.  As discussed above, we did not credit the assertions supported only by citations to the surveillance video.  But because the plaintiffs also cited Michael's deposition testimony, we did not accept the defendants' version of these facts.  Instead, we stated that "George *testified* that 'the spill was contained to the location where [Michael] fell' and that he took photos of that spill[.]" *Doc. 40* at 12 (emphasis added).  We noted that the plaintiffs asserted that the spill was much larger, spanning multiple aisles. *Id.*  And throughout our analysis, we adopted the plaintiffs' version of the fact and discussed a spill that spanned multiple aisles, rather than being confined to a single location. *See doc. 40* at 17–22.

As to the defendants' assertion that George "testified that he did not receive any calls at any time on December 12, 2020, informing of the presence of liquid or spills in any other area of the store, and similar to the liquid present in the soda aisle" (*doc. 32* ¶ 81), we adopted this assertion despite the plaintiffs' denial thereof (*doc. 40* at 13).  We noted that although the plaintiffs "deny" this statement they explained that "George's statement is contradicted by the video showing Walmart employees cleaning another aisle of the store shortly after the fall." *Doc. 38* ¶ 81.  To support their version of the fact, the plaintiffs cited a portion of George's

deposition testimony in which George answers questions about what he sees in the surveillance video. *Id.* (citing *doc. 32-4* at 78, 81–82). We reviewed the cited deposition testimony and concluded that George did describe the video as showing clean up happening in an aisle of the store other than aisle 28. *See doc. 32-4* at 7, 81–82. But this does not go to the question whether George received any calls regarding spills in another area of the store. Accordingly, we noted the dispute but still credited the defendants' version of this fact because the plaintiffs "[did] not deny that George testified to not receiving calls, nor do they offer evidence that George received any *calls* about another spill, whether further clean up took place in the store or not." *Doc. 40* at 13 n.6.

***

The plaintiffs argue that we did not make reasonable inferences in their favor and resolved disputed issues of fact in the defendants' favor. *Doc. 48* at 8–10. Specifically, the plaintiffs argue that the spill "would have taken a significant amount of time to spread throughout the store[,]" "likely . . . 20 or 30 minutes[,]" and that the spill was of the size that it "occurred in the vicinity of Walmart employees" because it "covered much of the store" and "there were multiple Walmart employees filling online shopping orders[.]" *Id.* at 9. Moreover, according to the plaintiffs, we "treated [certain] factual disputes as if they did not exist" and these disputes "should have precluded entry of summary judgment." *Id.*

34

at 10.  The disputes in question, according to the plaintiff, are "the location of the spill, the extent of the spill, the amount of the spill, the characteristics of the spill and the proximity of Walmart employees to the spill." *Id.*  The plaintiffs further argue that where the record on summary judgment has "unexplained gaps" we may not "presume away such unknowns and grant summary judgment." *Doc. 57* at 7.

As described above, we adopted the plaintiffs' version of the facts for summary judgment purposes where the plaintiffs cited to evidentiary support for the contrary position, and we made the reasonable inferences that arise from those facts.  Among other things, we concluded that the spill was at the end of the soda aisle and multiple nearby aisles.  But we did not engage in the speculation the plaintiffs now assert was our obligation.  We did not conclude that the spill would have taken 20 or 30 minutes to leak from a customer's cart, as there was no evidence to support such a leap. *Cf Plunkett v. Matthew International Corp.*, No. 2:16cv1512, 2020 WL 4431561, *1 (W.D. Pa. July 31, 2020) ("mere conjecture or speculation by the party resisting summary judgment will not provide a basis upon which to deny the motion") (citing *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382–83 n.12 (3d Cir. 1990)).  Nor did we presume that the customer who allegedly caused the spill ran through the aisles, as the plaintiffs posit. *See doc. 48* at 9.  Instead, we concluded that the spill spanned multiple aisles and was present for an unknown duration.

Similarly, we did not conclude that employees were in the vicinity of the spill as the plaintiffs neither provided evidence leading to such an inference nor argued why the evidence as it was presented could lead a jury to that conclusion. Instead, we relied on the provided evidence that there were some employees in some aisles of the store.  No further evidence regarding employee proximity was presented.  As such, we did not presume that the employees were in the aisles of the store where the spill spanned, or even aisles close thereto.  We were given no information to assume that the employees were even in the grocery portion of the store.  We thus did not make the conclusion the plaintiffs now ask us to make—that the spill was "in the vicinity" of Walmart employees.  Presented with evidence that the spill spanned multiple aisles, we also did not conclude that this was "much of" the store.  Again, such a conclusion is beyond the bounds of reasonable inference based on the evidence we were provided.

### E.  We Relied Upon Case Law Which Was Pertinent in Context.

In our Summary Judgment Opinion, because Tamera's loss-of-consortium claim is derivative of Michael's negligence claims, we focused on Michael's negligence claims. *Doc. 40* at 13–14.  Because of Michael's status as an invitee on the defendants' property, we concluded that:

the defendants owed Michael the following duty of care:
> A possessor of land is subject to liability for
> physical harm caused to his invitees by a condition
> on the land if, but only if, he
> (a) knows or by the exercise of reasonable care
> would discover the condition, and should realize
> that it involves an unreasonable risk of harm to
> such invitee, and
> (b) should expect that they will not discover or
> realize the danger or will fail to protect themselves
> against it, and
> (c) fails to exercise reasonable care to protect them
> against the danger.

*Doc. 40* at 15 (quoting *Pickett v. Target Corporation*, NO. 3:20-237, 2021 WL

5163220, *3 (M.D. Pa. Nov. 5, 2021) (cleaned up)).  Because the parties do not

posit that the defendants created the spill, we set forth the requirements for finding

a store negligent when the condition was created by a person other than those for

whom the landowner is accountable. *Id.* (citing *Pickett*, 2021 WL 5163220 at *3).

"Specifically, 'the plaintiff[] ha[s] to establish that the store or its agent was

negligent in that the [store] had either direct or constructive *notice* of the foreign

substance on the floor as a potentially dangerous condition.'" *Id.* (quoting *David v.*

*Pueblo Supermarket of St. Thomas*, 740 F.2d 230, 233 (3d Cir. 1984) (citing

Restatement (Second) of Torts § 343)).

Because the parties agreed that there is not evidence that Walmart had actual

knowledge of the liquid in which Michael fell, we analyzed whether a reasonable

jury could find that Walmart had constructive notice of the spill.  *See id.* at 16–17.

We acknowledged that "[n]ormally, the evaluation of whether [the defendant] had constructive notice of a condition is an inquiry for the jury." *Doc. 40* at 19 (quoting *Pickett*, 2021 WL 5163220 at *4) (internal quotation marks omitted). But we also noted that "where the evidence presented requires a jury to rely on 'conjecture, guess or suspicion,' the court is to make such a determination." *Id.* (quoting *Pickett*, 2021 WL 5163220 at *4). Further, we set forth factors used by courts to determine constructive notice: "the number of persons using the premises, the frequency of such use, the nature of the defect, its location on the premises, its probable cause, [ ] the opportunity which defendant, as a reasonably prudent person, had to remedy it" and "the time elapsing between the origin of the defect or hazardous condition and the accident." *Doc. 40* at 18–19 (quoting *Felix v. GMS, Zallie Holdings, Inc.*, 837 F. Supp. 2d 430, 437 (E.D. Pa. 2011); *Pickett*, 2021 WL 5163220 at *3).

After considering the material facts as set forth above, and the parties' briefs regarding the motion for summary judgment, we found that the plaintiffs failed to point to evidence as to how long the spill was on the floor. *Doc. 40* at 20. Specifically, we found that the plaintiffs pointed to no evidence of the condition of the liquid prior to Michael's fall, aside from the plaintiffs' argument that the liquid was "tracked" based on the spill's presence in multiple aisles. *Id.* And after considering the case cited by the plaintiffs as supporting a conclusion that the

liquid was tracked, we found that the only factor present here was the liquid spanning multiple aisles—without evidence to suggest that the liquid was in multiple aisles because customers tracked it there rather than a single customer spilling the liquid as he or she walked.[6] *Doc. 40* at 21.

Moreover, we analyzed the plaintiffs' argument that the fact of the spill's presence in multiple aisles lessened the duration required to be shown for

---

[6] In the plaintiffs' brief in opposition to the defendants' motion for summary judgment, the plaintiffs argued that there is evidence of "tracking" based on the spill's presence in multiple aisles and cited *Roberts v. Kmart Corp.*, NO. 8-90, 2021 WL 2975886 (D. VI. July 21, 2011). In our Summary Judgment Opinion, we analyzed this argument as follows:

> In *Roberts v. Kmart Corp.*, the plaintiff "fell on a slippery orange substance on the floor, in the houseware area of Defendant's store." *Id.* at *3. "A witness observed a thick orange liquid going down the entire length of the aisle" and "[a]nother witness testified that there were 'sticky sounds' on the bottom of people's shoes as they were walking." *Id.* Moreover, the plaintiff "noticed marks, like 'car tracks,' going through the liquid on the floor" and "observed two store employees in the immediate vicinity at the time of her fall." *Id.* The Court concluded that "[t]aken together, and viewing the facts in the light most favorable to Plaintiff, the evidence is sufficient to create a genuine issue of material fact for the jury regarding notice." *Id.* None of these factors are present here, aside from the liquid spanning multiple aisles. And there is no evidence to suggest that the liquid was in multiple aisles because customers tracked it there rather than a single customer spilling the liquid as he or she walked by each of these aisles. This is a far cry from the confluence of factors the *Roberts* Court considered and ultimately found sufficient to create a genuine issue of constructive notice.

*Doc. 40* at 20–21.

constructive notice. *Doc. 40* at 21–22; *see also doc. 37* at 5 (arguing that "the duration required to find constructive notice for a spill that spans several aisles of the store is significantly less than the duration required to be shown of a small spill in a single aisle").  In support of this proximity argument, the plaintiffs cited a Third Circuit case which posited that "[a] jury might, indeed, find that constructive notice requires a shorter amount of time when a spill occurs in an area of the store near an employee rather than in some remote aisle far from workers' eyes." *Doc. 37* at 5 (quoting *Saldana v. Kmart Corp*, 260 F.3d 228, 234 n.3 (3d Cir. 2001)). We pointed out, however, that the plaintiffs have not shown that there were employees close to any of the aisles which the spill spanned.  Instead, the plaintiffs, apparently erroneously, claimed that Walmart employees were "walking the aisle where the spill was found[.]" *Doc. 37* at 4.  Because there was no evidence proffered to support this supposition, we "g[a]ve no weight to an argument that employees were in the very aisle in which Michael fell or in the other aisles across which the spill allegedly spanned." *Doc. 40* at 18, n.7.  We noted that instead, there was evidence that Michael saw some employees in various aisles collecting items to fulfill online orders. *Doc. 38* ¶ 22.  But there was no argument relating to how close those employees came to the spill. *See doc. 37*.

In this process, we cited to case law setting forth the standard courts apply to negligence claims subject to Pennsylvania law. *Doc. 40* at 18–20.  The plaintiffs

argue that this case law is "inapposite" because in most of these cases "the parties and the court agreed on the location and characteristics of the spill, leaving only the issue of whether such undisputed facts supported a finding of constructive notice." *Doc. 48* at 11–13. Specifically, the plaintiffs raise a concern that in most of the cases we cited in our Summary Judgment Opinion "the parties and the court agreed on the location and characteristics of the spill, leaving only the issue of whether such undisputed facts supported a finding of constructive notice." *Id.* at 12–13. "In sum," according to the plaintiffs, "while the cases the Court cited stand for the proposition that the location and characteristics of the spill may be examined to consider evidence of timing and duration, none of the cases stand for the proposition that, where the location and characteristics of the spill are unknown and/or disputed, the Court may assume away unknown characteristics and resolve those disputed issues on summary judgment."[7] *Id.* at 14.

    As discussed in greater detail above, we resolved all disputed facts in the plaintiffs' favor where there was record support to do so. We then analyzed

---

[7] The defendants counterargue that "[a]fter being guided by the applicable case law, the Court correctly found that Plaintiffs failed to present any evidence as to how long the spill was on the floor" and "properly determined that Plaintiffs' allegation that the spill tracked into other aisles was not sufficient to establish a timeline." *Doc. 56* at 15. The defendants assert that we "viewed the facts in a light most favorable to Plaintiffs and granted them the fact that the spill spanned multiple aisles" and "determined that the spill was likely greater and consisted of more than what was depicted in Walmart's photographs." *Id.* at 15–16.

whether those facts, if accepted by a jury, would permit a reasonable jury to conclude that the defendants had notice of the spill, as required to find negligence. We included the caselaw the plaintiffs now characterize as unfitting to reflect what factors courts consider when deciding motions for summary judgment based on constructive notice. *See doc. 40* at 18–20.  For our purposes, it is not significant whether the parties agreed to the facts or whether the court, like we did, adopted the nonmovant's version of the facts.  The factors applied to those facts were significant, and it was those factors which we applied to the facts viewed in the light most favorable to the plaintiffs.  Accordingly, we will deny the plaintiffs' motion for reconsideration on this basis.

### F.  We Find No Clear Error of Law or Manifest Injustice.

As summarized above, "[a] proper Rule 59(e) motion . . . must rely on one of three grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice." *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010).   The plaintiffs acknowledge that "[t]wo of these reasons are inapplicable[,]" because "[]there has been no change in intervening law[,]" and "[t]he surveillance video is not 'new' evidence[.]" *Doc. 48* at 14.  But the plaintiffs argue that we should "correct the unfairness of disregarding the surveillance video, . . . and . . . correct clear error of

law." *Id.*  The plaintiffs cite to four cases in which courts granted motions for reconsideration on "varying grounds[.]" *Id.* at 14–15.  The plaintiffs invite us to "remedy the unfairness of disregarding evidence cited by the parties but not attached to the briefs, and the Court can correct the clear error in taking the case away from a jury, which may have been colored in part by the lack of video corroboration for Plaintiffs' testimony." *Id.* at 15.

We considered the plaintiffs' collected cases which granted motions for reconsideration and found them all to be distinct from the instant case.  In *Sabatini v. ITS Amore Corp.*, NO. 3:05-CV-2586, 2008 WL 11344923 (M.D. Pa. Aug. 26, 2008), the court granted a motion to reconsider an order partially granting summary judgment.  In doing so, the court noted that "[w]hile it is unfortunate that Defendants have been slow to present pertinent evidence and develop relevant argument, we cannot ignore information now before us when it calls into question the appropriateness of our earlier decision" "particularly" where a community would be directly impacted by the decision. *Id.* at *3.  In this case, however, the parties are seeking reconsideration not of an interlocutory order partially granting summary judgment but a final order granting summary judgment as to all claims brought against all defendants.  Furthermore, there is no assertion of particular harm to the community if our summary judgment decision stands.

43

In *Kimmel v. Cavalry Portfolio Servs., LLC*, No. 10-680, 2011 WL 3204841 (E.D. Pa. July 28, 2011), the court granted a motion for reconsideration of its previous order granting summary judgment despite the fact that "[i]n most circumstances, a motion for reconsideration is denied when it is based solely on evidence that was available at the time of summary judgment[,]" "because the omission appear[ed] to have been a mere mistake—and because a motion for reconsideration may be granted even when the evidence was previously available in order to prevent manifest injustice[.]" *Id.* at *2. The plaintiff in *Kimmel* did not explain his failure to include the evidence in question, but stated that when he filed his sur-reply, he relied upon the evidence without realizing it was omitted. *Id.* at *2, n.2. Significantly, here the plaintiffs were on notice that they had failed to submit the surveillance video by way of the defendants' reply brief. As such, the circumstances here are distinct from *Kimmel* in which it does not appear that the plaintiff was notified of his omission.

In *Mobil Oil Corp. v. Amoco Chems. Corp.*, 915 F.Supp. 1333 (D. Del. 1994), the court granted the plaintiff's motion for reconsideration to "avoid manifest injustice" caused by the adoption of an incorrect calculation of damages. *Id.* at *1377. Despite noting that "[a] Rule 59(e) motion is not to be used as a vehicle to advance additional arguments that a party could have made before judgment but neglected to do so[,]" the court granted the plaintiff's motion for

44

reconsideration after considering the plaintiff's damage calculation which it neglected to present at trial. *Id.* The court does not provide reasoning for this conclusion that we can apply to the distinct facts here—where the motion for reconsideration seeks reversal of an order granting summary judgment and where the plaintiffs were on notice that their evidence was not submitted.

Finally, in *Burger v. Mays*, 176 F.R.D. 153 (E.D. Pa. 1977), the court granted the "[p]laintiff's motion to reconsider in order to prevent a manifest injustice" because it had granted the defense's motion in limine as unopposed when the plaintiff's attorney forgot to file a brief in opposition thereto. *Id.* at 155. The court simultaneously noted that it "could have easily taken a similar route to the court in *Lee v. Toyota Motor Sales, U.S.A., Inc.*, NO. 96-2337, 1997 WL 256976, *1 (E.D. Pa. May 16, 1997), which rejected a similar motion to the Plaintiff's." *Id.* at 155–56. The court chose, however, to reconsider its previous decision which had been decided "without considering its merits" and finding that the Defendant would not be prejudiced because it had already raised its arguments. *Id.* Here, however, the plaintiffs filed their brief in opposition, and we thus proceeded to the merits of the motion for summary judgment.

In accordance with the analysis throughout this opinion, we do not find clear error of law in the way we applied the motion for summary judgment standard of review. Moreover, we find no manifest injustice where we followed

Fed. R. Civ. P. 56(e)(2) rather than Fed. R. Civ. P. 56(e)(1), especially where the plaintiffs had notice of their failure to provide the surveillance video and ample opportunity to produce it.

## VI.  Conclusion.

Based on the foregoing, we will deny the plaintiffs' motion for reconsideration (*doc. 47*).  An appropriate order follows.


**_S/Susan E. Schwab_**
Susan E. Schwab
United States Magistrate Judge